Ms. McKee, would you announce our first case for argument, please? Case number 23-1365 from the Northern District of Iowa, Robert Sharp v. United States. Mr. Cole, I see you've been appointed under the Criminal Justice Act. That's correct. We appreciate your willingness to accept the appointment. Thank you so much. Love coming down to St. Louis, though I wish it were warmer. Me too. Your Honors, may it please the Court. If you were to ask a law student, what is the purpose of our rules relating to conflict of interest? Both at the ethical rule as well as the constitutional principle as set forth in Kyler v. Sullivan. What would the primary fear be? Well, I think the answer to that question is shown by this precise case. What is the fear animating all conflict of interest cases? It's that the divided loyalties that the lawyer has from one client to another hurts either one of those clients and or benefits the other client. Your Honors, I would argue to you that that's precisely what we have here. There's five volumes in the appendix, but I would direct your attention to two aspects of this case. The first aspect is the proffer. That was done in June of 2014. This is when Joel Schwartz had represented Robert Sharp and set up a proffer, which we all know is a critical first step to let the government what you know in terms of whether you can cooperate. During the course of that proffer, he identified Hedy Shareri as a, that he supplied a significant quantity of drugs to Hedy Shereri. Not just one transaction, but over the course of several weeks. He also identified Mohamed El Shereri and Melissa El Shereri. Now we believe there's conflicts there, but my view of the case, if you don't find Hedy Shereri as a conflict, we're not going to find a conflict warrant in relief for those other two. So that's where the seeds of this conflict are hatched. That's where they're set. That's where they're planted. Now hindsight is 20-20, Your Honors, but you think of, and Mr. Schwartz is there during the actual proffer. He knows at this point, and it's in the record, that he had already represented Hedy Shereri. Mr. Sharp implicates Hedy Shereri in his dealing activities related to synthetic marijuana. At that point, one of the things you will not find in that record, of all five volumes, you will not find any waiver signed by Mr. Sharp. You will not find any disclosure to the court in which Mr. Schwartz indicates that, hey, I have a problem here. I can't manage these two things. And hindsight is 20-20 here, Your Honors, but if you look at that moment, at that point, game, set, match. It's over. He should not have continued on with the representation of Mr. Sharp. But it gets worse, Your Honors. He then tries to, Mr. Yes? I think you, and I think probably wisely, focus this down to Hedy. Yes. But doesn't, okay, I understand what you're saying. It sort of becomes perhaps obvious that there may be a conflict during this proffer. But doesn't your client have to show that that affected the strategy or the calling, you know, that perhaps Mr. Schwartz should have called Hedy as a witness? But I think the problem with that is Hedy testified at the sentencing and was not very favorable. The testimony was not favorable to your client. So two responses to that, Your Honor. One lane that we have here that's different than advice of counsel is an alternative, positive strategy for representation that could have been utilized. One of which was, is the cooperation on part, on Mr. Sharp to cooperate against Schirrari. So that's the issue with that. And I think that, and that's actually linked to the conflict. Now, what do we know in terms of whether Mr. Schirrari or what Schwartz's reasons were about what type of information that he had related to Mr. Schirrari? We don't know that. I'm sorry, Your Honor. No, I'm just, no need to be sorry. Yeah. I'm just thinking, I mean, is there anything in the record that suggests that Mr. Schwartz, well, one, that the government was interested in his cooperation, and two, that Mr. Schwartz somehow interfered with his ability to cooperate against Hayden? Your Honor, the record is silent on that because if you look at his affidavit, Mr. Schwartz's affidavit, he does indicate that he has to maintain the confidentiality of Mr. Schirrari. So we don't know what information that Mr., or what communications that Mr. Schwartz would have had in connection with Mr. Schirrari. The record is silent as to whether Mr. Schwartz ever advised Mr. Sharpe to cooperate against Schirrari, but that's the conflict, Your Honor. But Sharpe, if that were true, Sharpe certainly could have, you know, submitted some evidence of that affidavit or whatever. But that's the whole point, is there is no evidence on that because there's no indication that Mr. Schwartz ever advised him to do that. In other words, that's part of the conflict. How do you advise one client to cooperate against the other? Certainly the fact that Mr. Sharpe had wanted to actually cooperate was reflected in the fact that he did this proffer, which is the first critical step for that. Now, I also take issue, very respectfully, Your Honor. Is there any evidence that the government was interested in his cooperation after the proffer? The proffer itself suggests that their willingness to listen. I don't think there's anything in the record. The government's always willing to listen. It doesn't mean they're willing to cut a deal with you. There is nothing in terms of cooperation offered that I'm aware of in the record itself. But again, to what extent is Schwartz going to indicate, yes, I want to set up a cooperation plea deal in which I'm going to implicate my former client? That's part of the problem, Your Honor. And if I may, Your Honor, I would take issue very respectfully with your notion that Haiti-Shareri did not help Mr. Sharpe. It is true he did not say, yes, Mr. Schwartz said, hey, you can deal synthetic marijuanas and there's no issue there. But he did confirm that he had retained Mr. Schwartz to advise on synthetics. He did confirm that, number one. And number two, he also confirmed that he had product on the shelves that he took off after a law enforcement raid. He consulted with Mr. Schwartz. And afterwards, he put the product back on. Now, oftentimes from prosecutors, we often hear, circumstantial is just as good as smoking gun. That's what we have here. But I would argue that that was favorable. And then back to Mr. Lahammer's argument. But didn't he deny, more specifically, working with your client to provide a sample to Mr. Schwartz and paying Mr. Schwartz to have the sample tested and that kind of thing? I thought he denied all that. It's a cross-examination, Your Honor. And I'll hopefully get to it in my reply. He does say that to check on the chemicals and stuff, I think he denied that there was actual testing done, but that one of the purposes of the representation was to check on chemicals and stuff. I think I'll get the reference to that in my reply. The other issue really – Counsel, let me ask you a question. Oh, I'm sorry. Go ahead. You go ahead. All I was going to say is, to what extent is any advice of counsel argument at all foreclosed by this Court's previous well-written opinion, footnote 3 in that opinion? Okay, so I'm not aware of footnote 3 off the top of my head. It's the one that says that you've not established that there was any actual reliance on counsel's advice in a good-faith belief that conduct was legal. Your Honor, and that's what the parties were hung up on was the advice of counsel defense in establishing that we didn't establish actual conflict. Because there was no advice of counsel, it forecloses any conflict-related argument. And my response to that, Your Honor, is we had two or three other channels to explore to show the adverse performance. It's not just advice of counsel. One alternative plausible strategy, which is all we have to show, was whether he would have gone to trial on the basis of an absence of knowledge that these things were actually illegal. That's an alternative route that could have been taken. To Judge Grunder's point, there could have been a cooperation route that meaningfully – who are we kidding – could not have reasoned – Do you argue the cooperation route in your brief? Yeah, it's there. It is there. I got hung up on the other issues. And that's basically what happened with Mr. LeHammer. Now, Mr. LeHammer, I mean, he's the Lou Gehrig of attorneys in Cedar Rapids. A fantastic lawyer. But even Lou Gehrig struck out. And that's what happened here. Mr. LeHammer was caught up on the credibility finding in the sentencing court and says, Well, why does it matter? Because we all found on the basis of credibility that Mr. Schwartz was credible and Mr. Sharp was not. So why complain to Judge Reed about that? And my response to that is – excuse me, Your Honor – my response to that is, is that you don't need to resolve on credibility to determine that there's a problem here. I mean, think about what happened here, Your Honors. At sentencing, Schwartz's former client was cooperating against Sharp. And he got an obstruction because the letter that Sharp sent to Mr. Schwartz, or to Mr. Herrera, basically, said, Hey, we hired him together. And that was by virtue of the joint representation, as far as it goes. So that's significant, Your Honor. Mr. Schwartz's former client, Hades Scherreri, cooperated against Sharp. Sharp got an adverse outcome. His other client got a favorable outcome. It would be a former client. But if you look at the distinction between the ethical rules of former and current, not much different. You still really have the same duties in terms of disclosure and consent, which is not done here, Your Honor. And so that's why, Mr., having wanted to, and I think it would have at least bolstered the advice of counsel argument, as far as that goes. And Judge Erickson, you had one as well. Yeah. Well, my question really was pretty straightforward. Your claim is that we don't know. Once we get to we don't know, your appeal really is limited to the judge should have held an evidentiary hearing, right? Because, you know, I think this record, you know, you're making statements here today, some of which were not actually in your brief, some of which were not developed until the brief, right? I mean, they never appeared anywhere, and they certainly weren't presented in the original 2255 before Judge Reed. And so, you know, it just seems like this record wasn't developed from your point of view. Judge Reed said it didn't need to be developed any further because there is no evidence, because you didn't show where the problems were. Well, I think that may be one issue here, too, is I requested, if you look at my reply. Yeah, you requested the hearing, and she said. And I identified all of those, and essentially she found that it was frivolous. I didn't even get an IFP finding because she said I didn't take the appeal in good faith. So if the court wants additional record, I think one outcome could be a remand for a full evidentiary hearing, which is not present here. I did argue the alternative basis for cooperation. And in terms of I don't know, that's just in terms of the communications that he may have had with Herreri and whether they vigorously explored cooperation. That's not present in the record. I admit that, but that's because of the conflict. So it's not just kind of fishing for that. I mean, that is by virtue of the conflict, which he could not have meaningfully done. So that's kind of the concern related to that. And Judge, did you have a question? No, I was looking at your time. But go ahead. Yes. But I was ready to finish up and reserve my remaining time. Thank you, Your Honor. Very well. Thank you, Mr. Cole. May it please the court. Counsel. My name is Adam Vanderstoop. I'm an assistant United States attorney in Cedar Rapids, Iowa. Your Honors, in this case, the district court properly found that petitioner, Mr. Sharp, failed to demonstrate an actual conflict of interest by trial counsel, Mr. Schwartz. This court has already largely decided this issue in its underlying East Circuit opinion. There's nothing in the record that demonstrates that petitioner, Sharp, has shown an actual conflict of interest. And even if there was a conflict, it did not adversely affect Mr. Schwartz's performance. To establish a violation of the Sixth Amendment due to a conflict of interest, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. To show adverse effect, a defendant must show that his attorney failed to pursue reasonable alternative defense strategies because of the conflict. If a reasonable attorney would have adopted the same trial strategy absent a conflict, the petitioner cannot show that counsel's performance was adversely affected by that conflict. The mere fact that a trial lawyer had previously represented a prosecution witness does not entitle a defendant to relief. Rather, the defendant must show that this successive representation had some actual and demonstrable adverse effect on the case, not merely an abstract or hypothetical one. In this case, defense counsel in his brief argued that there were potentially three witnesses for which Mr. Schwartz had conflicts of interest in this case. Earlier in the argument, he pretty much put his eggs in the basket of Hattie Sherrari and said, if you don't find for Hattie, then we're not going to focus on Muhammad. That's because both Muhammad and Melissa can be easily dispelled because they were fugitives and could not be called. So the adverse aspect takes care of that. For Hattie Sherrari, he was not a co-defendant in the case with Mr. Sharp. He was also not listed on the government's trial witness list to be testifying against Mr. Sharp if Mr. Sharp would go to trial. Additionally, in Schwartz's affidavit in responding to Mr. Sharp's claims, Schwartz testified that his representation of Hattie was not for the purpose of advising Hattie what substances were legal to sell. That is consistent with what Hattie also testified about at the sentencing hearing. His testimony was that Schwartz never gave him any legal advice about what particular substances were legal to sell. He just said that he was advising him on his business. Hattie also acknowledged at the sentencing hearing that he knew those drugs were illegal to sell and he did it anyway. Additionally, in Schwartz's affidavit, he indicated that his representation of Hattie ended before Sharp's indictment on the case. Based off of Schwartz's affidavit and Hattie's testimony, Hattie had no direct knowledge of any advice that Schwartz would have given directly to Petitioner Sharp. Hattie also would have no knowledge of anything that Sharp specifically discussed with his attorney, Schwartz. Additionally, his testimony would not support Sharp's claim that Schwartz advised Sharp that it was legal to sell synthetics after Mr. Sharp disclosed all the material facts to Mr. Schwartz. Which goes to the footnote in that first case of there is no advice of counsel defense. Mr. Vanderstoop, I thought I heard Mr. Cole say that Hattie testified that he went to Mr. Schwartz to consult about the legality of some of these synthetic drugs. Is that not, is Mr. Cole mistaken on that? Your Honor, in the sentencing he was asked questions about his consultation with Mr. Schwartz. He did say that Mr. Schwartz was his previous attorney and that he consulted with him regarding his business. He did not say that Mr. Schwartz gave him any direct representation about what substances were legal or were not legal to sell. And he actually specifically says that he never sent any substances over to Mr. Schwartz for testing. He also said he never had conversations about THJ, I believe it's 011. And Hattie's testimony was because he didn't know anything about chemicals, so that's why he didn't have those conversations with Mr. Schwartz. So what about this idea that he might have been able to cooperate? Your Honor, the record belies the argument that Mr. Sharp was not able to cooperate because of Mr. Schwartz's prior representation of Hattie Sherreri. In this case, Mr. Sharp did proffer with the government, which shows that he did sit down, he did provide the information. So to argue that he could not cooperate is belied by the fact that he did sit down with the government and did proffer. It happened. Does the record show what the government said, if anything, in response to the proffer? Or did in response to the proffer? No, Your Honor. There's nothing in the record indicating whether or not the government had any further conversations. Nothing at all? Either way, up, down, see you later? There's nothing in the record.  But again, Your Honors. Let me ask you, does that mean that the record needs to be developed more? That there should have been an evidentiary hearing? I don't believe so, Your Honor. And I know that was something that came up during the opposing counsel's argument that he had also requested the hearing and that was denied. Ultimately, that was not an issue that was raised in the appeal brief as to whether or not Judge Reed abused her discretion. I'm not entirely sure if that was a standard, but whether or not she erred in not granting the evidentiary hearing. Because that was not raised in the appeal brief, it's not properly before the Court here today. I'm not in a position to tell you what the standard is and whether the analysis is correct. However, based off of the record at hand and the standard here, whether there was a conflict of interest pertaining to Mr. Schwartz, it simply does not fit the Kyler standard. One, there's nothing in the record to indicate that there was an actual conflict of interest. And two, even if this Court just assumes that there was an actual conflict, there's nothing to indicate that Mr. Sharp would have been adversely impacted or that Mr. Schwartz's representation was adversely impacted because of that conflict. And the question that can be asked for determining that is, what would a counsel without the conflict have done in this case differently than what Mr. Schwartz did? This Court, in its prior Eighth Circuit opinion, discussed specifically the advice of rights defense or the advice of counsel defense that Mr. Sharp had provided. And I'm just reading from the prior opinion. Inasmuch as Schwartz's testimony would have probative value under the standard, Sharp has not shown that such a strategy would have been objectively reasonable under the facts of this case. What page are you on? Thank you, Your Honor. I'm on page 334. Okay. And what part of that do you have, the infamous head notes? It is just briefly on to page 34. It starts as inasmuch as Schwartz's testimony. Okay, good. Go ahead. Proceed. It's the main head note. Go ahead. Thank you, Your Honor. And I believe it was a little bit into the section there where Sharp has not shown that such a strategy would have been objectively reasonable under the facts of this case, nor has he shown that Schwartz's advice to plead guilty was linked to the actual conflict. Schwartz reasonably expected that the government could prove, beyond a reasonable doubt, that Sharp knowingly possessed a controlled substance. Indeed, in his testimony at the plea withdrawal hearing, Schwartz mentioned the undercover purchase attempt where Sharp's employee stated that Sharp took the herbal incense out of the store at night, Sharp's emails ordering THJ011 under the heading of AB Fubinaca, the alias Sharp used to purchase a storage locker for the incense, his paying his employee in cash, and his labeling the incense as not for human consumption, even though Sharp knew his customers were smoking it. In addition, Sharp knew that the substance had a disorienting effect and his prior drug conviction demonstrates some familiarity with the drug laws. Moreover, had Schwartz testified, he would have explained that he told Sharp that synthetic drugs were either illegal or would soon be classified as illegal. He also would have stated that he told Sharp that his business was too dangerous and that Sharp should stop. If anything, such testimony would burnish the government's case that Sharp did know that his product was illegal. Given these facts, the alleged conflict did not adversely affect Schwartz's performance in advising Sharp to plead guilty. Same thing, even if Mr. Schwartz would have decided to call Hattie to testify at a trial, if a trial would have happened in this case, Hattie's testimony at sentencing establishes that it would not have assisted Mr. Sharp in the way Mr. Sharp believes it would have. If anything, it would have, again, burnished the government's case showing that Mr. Sharp knew that what he was doing was illegal. Given that, Hattie's testimony at sentencing also shows that in this industry as a whole, individuals were acting with a willful blindness regarding what these synthetic cannabinoids contained. He also indicated that in 2013, after the raids at his store, he was told it was illegal because law enforcement told him that, and then after that, after time had passed, he still decided to put those products back out and sell those products, willfully blind as to what those products contained. One of the things that was mentioned by defense counsel in the brief was Hattie Shrary's testimony at sentencing saying that it was inferred or there's strong circumstantial evidence that clearly Mr. Schwartz had told Hattie that he could sell those products because after the raid, he consults with Schwartz, and then Hattie puts those products out on the shelf. What's ignored or omitted from the petitioner's brief is the fact that he directly denied at the sentencing on cross-examination whether or not Schwartz ever actually told him he could sell those products. He said, I don't know what the exact quote is off the top of my head, but I think it was, he never exactly told me that I could go ahead and sell the product. It confirms that while he was consulting with Schwartz, Schwartz was not telling anybody, like Schwartz says in his affidavit, that it was legal to sell these products. Instead, what he was doing was running the chemicals online, seeing if it was on the DEA website, seeing if anything popped up on Google, and then saying, hey, I don't see anything, or hey, I do see something. He was never advising anybody that it was legal to sell these drugs. In fact, he told Sharp it was too dangerous of a game for him to play. Based off of everything in the record, there is nothing again to indicate that there is a demonstrable, actual conflict that Mr. Schwartz had, and again, if so, the second and critical factor, there is no indication that any alleged conflict had any adverse effect on Mr. Schwartz's performance. Unless there are specific questions regarding Mr. Schwartz, I'll transition to Mr. Lahammer. All right, seeing no questions. Mr. Lahammer, again, there was no credible evidence to show that Petitioner had a valid advice of counsel defense, based on the advice he had received from Attorney Schwartz. As such, sentencing counsel was not ineffective in declining to reassert that conflict issue at sentencing. In the opposing counsel's brief, it was mentioned that there would be automatic reversal in this case if it was raised and the district court judge did nothing to address the conflict. It's pure speculation on behalf of Petitioner to suggest that the district court would have not engaged in the appropriate inquiry regarding the alleged conflict triggering an automatic reversal. Again, as this issue relates to specifically whether Attorney Lahammer should have raised prior counsel's alleged conflict, this court should judge Attorney Lahammer's decision based on the Strickland standard for deficient performance to determine whether or not Lahammer was ineffective in believing that there was insufficient evidence to demonstrate an actual conflict based on the testimony that was elicited by Mr. Shrary at that sentencing. And again, the testimony from Mr. Shrary at that sentencing was consistent with the testimony that came out from Mr. Schwartz at Mr. Sharp's motion to withdraw his plea. There was nothing in there that contradicted what Mr. Schwartz said. In fact, this court, again, in that underlying Sharp case, when determining the issue of whether the court sua sponte should have brought up or reconsidered the motion to withdraw, found and held that because the evidence elicited at If you're on a page, tell me where you're on a page. I'm towards the end of the case on that one. It'll be on 338. There's a heading, Courts Failure to Reconsider the Motion.  The 8th Circuit said, Because the evidence elicited at sentencing neither rehabilitates Sharp's credibility nor undermines the evidence of guilt, the District Court did not plainly err in failing to reconsider the motion to withdraw the guilty plea sua sponte. So this court, even looking at Hattie's testimony at sentencing, determined that Hattie's testimony did not undermine what was said by Mr. Schwartz at the motion to withdraw a plea, and it also did not rehabilitate Mr. Sharp's allegations. Hattie pretty much said that he did not go with Mr. Sharp to Mr. Schwartz. He said that they did not pool money together. He did not send any samples to Mr. Schwartz. Conflict was not the subject of the motion to reconsider, right? Conflict was not the basis of the withdrawal of the guilty plea? It depends. Said better? It depends. The conflict of Mr. Schwartz and his advice of counsel defense was the subject of the motion to withdraw. If we're talking about the conflict of his prior representation of other witnesses, then that's correct. That was not the subject. Proceed. But, again, Mr. O'Hammer is not required to raise that specific issue. Again, regarding the specific conflict that he had of other witnesses, Mr. O'Hammer said that he discussed it with his attorney and with Mr. Sharp, and Mr. Sharp never asked for that conflict to be raised. And, again, I think the district court's analysis in this case for the order denying the motion to amend, and I see I've got 30 seconds left, kind of summarizes this well. Even if Mr. O'Hammer erred by not making Sharp's desired argument, specifically regarding the conflict, Sharp is unable to show any resulting prejudice from O'Hammer's decision because Sharp is unable to show that Schwartz's alleged conflict resulted in prejudice or that the conflict adversely affected Schwartz's performance. For all those reasons, Your Honor, the government asks that the 2055 motion be denied and that the conviction be affirmed. Thank you. Thank you, Mr. Vander Stoop. Mr. Colvin, rubato. Judge Grender, I want to direct your attention to your question about what was said with Mr. Chereri. That would be pages 10 and 11 of my direct appeal brief. And in that particular portion of the brief, if you read that, I just read one sentence, that O'Hammer asked if Haiti had hired Schwartz to represent you to make sure your business activities were legal. Haiti replied yes. So the only purpose of consulting at that point is to make sure that the activities relating to synthetics were legal. And then he also said on cross-examination that it was my business. How do we get to the specifics of synthetics? I mean, his business was synthetics. That's why he hired a lawyer. Do we know that that's the only aspect of his business? Well, he says that on page 11. Well, I think that there was dual-use insets and synthetics. That's the exact same situation as Mr. Sharp, but the issue there is that in the context of what was said, that would make sure the synthetics rather than the insets were legal, essentially, was the argument there. And then he also said relating to testing, at sentencing transcript page 144 on page 11 of my brief, that he said one of the reasons was to have testing. Yeah, I don't know. Yeah, testing. Of course, yeah. So he did confirm that on cross-examination. He would have been a witness. He may have been an adverse witness. That happens sometime. And Judge Erickson, I would just direct your attention to my reply brief in the 2255 at page 10, where I did, in support of my request for the evidentiary hearing, identify the conflicts of material fact relating to the proffer. I did not separately seek a certificate of ahealability on that precise issue, but I do believe the court has the discretion, given the issue's brief, to be able to remand it if the court feels it's necessary related to that. And then finally, related to the plain air issue, the Eighth Circuit, the previous panel was addressing the issue related to advice of counsel, not these other columns. I do admit that that issue related to cooperation is limited, but I think that that is because of the nature of the conflict itself. He's not going to advise one client to testify against another, even though that's precisely what happened to Mr. Sharp. That's a conflict, and we'd like to get a new trial on that basis. Thank you, Your Honor. Thank you, Mr. Kohler. The court appreciates both counsel's appearance and argument. The case is submitted and will issue an opinion in due course.